IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs at Knoxville December 18, 2018

**LAGERALD JOHNSON v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**Nos. 14-06112, 15-05311, 15-05312, 16-00096, 16-00159     Glenn Ivy Wright, Judge**

_____

**No. W2018-00744-CCA-R3-PC**
_____

The Petitioner, LaGerald Johnson, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his convictions of one count of aggravated assault, three counts of domestic assault, and one count of harassment and resulting effective six-year sentence. On appeal, he contends that he received the ineffective assistance of trial counsel, which resulted in his guilty pleas being involuntary. Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ALAN E. GLENN and D. KELLY THOMAS, JR., JJ., joined.

Patrick E. Stegall, Memphis, Tennessee, for the appellant, LaGerald Johnson.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

The record reflects that between December 2014 and January 2016, the Shelby County Grand Jury filed five indictments charging the Petitioner with one count of aggravated assault, a Class C felony; four counts of domestic assault causing bodily injury, a Class A misdemeanor; and one count of harassment, a Class A misdemeanor. The Petitioner hired an attorney (hereinafter "first trial counsel") to represent him in case number 14-06112, which involved one count of domestic assault, and the trial court

appointed an attorney from the public defender's office (hereinafter "second trial counsel") to represent him in the remaining four cases.

On April 22, 2016, the trial court signed an order allowing first trial counsel to withdraw and appointing another attorney from the public defender's office (hereinafter "third trial counsel") to represent the Petitioner in case number 14-06112. That same day, the Petitioner pled guilty to one count of aggravated assault, three counts of domestic assault causing bodily injury, and one count of harassment. Pursuant to the plea agreement, he received a six-year sentence as a Range I, standard offender for the felony conviction and concurrent sentences of eleven months, twenty-nine days for the misdemeanor convictions. The trial court was to determine the manner of service of the sentences and immediately held a sentencing hearing to consider the Petitioner's request for probation. The trial court denied probation and ordered that the Petitioner serve the effective six-year sentence in the county workhouse.

The Petitioner filed a timely pro se petition for post-conviction relief, claiming that he received the ineffective assistance of counsel because third trial counsel promised him probation. He also alleged that the State committed prosecutorial misconduct because no special conditions were noted on his judgment forms when he signed them on April 22, 2016; however, when he received copies of the forms, the State had written "NO PSRS," which stood for "no petition to suspend remainder of sentence," in the special conditions box. The post-conviction court appointed counsel, and post-conviction counsel filed an amended petition, adding that the Petitioner did not voluntarily plead guilty because third trial counsel failed to inform him before his guilty pleas that "NO PSRS" was a condition of his plea agreement.

At the evidentiary hearing, third trial counsel testified for the Petitioner that he had been practicing law for four years when the trial court appointed him to replace first trial counsel. Third trial counsel said that he represented the Petitioner in one case involving a misdemeanor and that second trial counsel, third trial counsel's colleague at the public defender's office, represented the Petitioner in the remaining cases involving the felony and other misdemeanors. On the day of third trial counsel's appointment, he "resolved" the misdemeanor case by entering a guilty plea for the Petitioner. He said, "As I recall three pleas had already been entered by [second trial counsel]." Third trial counsel then "took over" for second trial counsel and represented the Petitioner in all of the cases at the sentencing hearing.

Post-conviction counsel asked if third trial counsel promised that the Petitioner would receive probation. Third trial counsel answered, "I never would have made a promise that probation would be granted." However, third trial counsel thought the Petitioner had "a good chance" of receiving probation. Third trial counsel said that

immediately after the trial court denied probation, he and the Petitioner discussed filing a petition to suspend the remainder of the Petitioner's sentence, and he gave the Petitioner "a lot of information about what he would need to do to insure that that petition gets granted in the future."

Third trial counsel testified that he did not learn until later that the Petitioner's plea agreement prohibited the Petitioner from filing a petition to suspend the remainder of the sentence. Third trial counsel stated that "because I did not negotiate that plea, or enter it, I didn't realize that had already been previously negotiated." He acknowledged that "NO PSRS" may have been written on the Petitioner's judgment forms. However, the prosecutor and second trial counsel "did that paperwork." Third trial counsel did not fill out the judgment forms, and he did not review them with the Petitioner. Post-conviction counsel asked if the Petitioner was confused "about a PSRS," and third trial counsel answered as follows:

> Well, there was certainly some confusion about whether a PSRS was an option and the information that I gave him was definitely wrong, that he could file that, and I didn't know that it wasn't an option. I think I learned that, many months later when I finally actually tried to file that petition.

On cross-examination, third trial counsel acknowledged that the Petitioner's plea and sentencing hearings occurred on the same day and that he was present at both hearings. However, he did not remember the State's saying repeatedly at the plea hearing that the plea agreement prohibited the Petitioner from filing a petition to suspend the remainder of the sentence. He also did not remember if the Petitioner's judgment forms showed that the Petitioner could not file a petition to suspend the remainder of the sentence. Third trial counsel did not review the Petitioner's judgment forms prior to the plea hearing.

Third trial counsel acknowledged that the Petitioner may have qualified as a Range II offender for the aggravated assault conviction. If so, the Petitioner was facing a ten-year sentence for that felony. The Petitioner also could have received consecutive sentencing for the misdemeanor convictions for a total possible sentence of fourteen years. Third trial counsel said that he did not know what discussions first and second trial counsel had with the Petitioner regarding the Petitioner's plea agreement and that he did not review the paperwork for the State's plea offer. He acknowledged that the trial court was "somewhat displeased" with the Petitioner at the sentencing hearing because the Petitioner blamed the victims. Third trial counsel said the Petitioner's blaming the victims was the "primary reason" the trial court denied the Petitioner's request for probation.

- 3 -

The Petitioner testified that he pled guilty to the felony and misdemeanor offenses and received an effective six-year sentence. Third trial counsel told him that he would receive probation if he could get the victims to testify on his behalf at sentencing.[1] After the trial court denied probation, the Petitioner asked third trial counsel what the Petitioner could do to get probation. Third trial counsel told him "to go out here and get this many certificates." The Petitioner "got all of the certificates" and filed a petition to reduce the remainder of his sentence. At that point, he learned about the "'no PSRS.'"

The Petitioner testified that prior to his guilty pleas, no one ever told him that he could or could not file a petition to reduce the remainder of his sentence. None of his attorneys discussed the issue with him, and he did not know it was part of his plea agreement. He also did not see the special condition on his judgment forms. He acknowledged that according to the transcript of his guilty plea hearing, the prosecutor said several times at the hearing, "'No petition to suspend remainder of sentence.'" However, the Petitioner did not know what that statement meant because trial counsel had never discussed it with him. He said that if he known he could not file a petition to suspend the remainder of his sentence, he would not have filed such a petition.

The Petitioner testified that initially, he had two different attorneys representing him: first trial counsel and second trial counsel. They offered him probation, and he agreed. First trial counsel moved to San Diego and did not show up for the Petitioner's plea hearing. Third trial counsel was present and asked the Petitioner, "[W]ould you like for me to handle it?" The Petitioner thought he would get to go home, so he told third trial counsel yes and signed some paperwork so third trial counsel could take over the case from first trial counsel. The Petitioner said that after the trial court denied his request for probation, he did everything he could in confinement to demonstrate that he deserved to have the remainder of his sentence suspended. He stated, "I didn't know that the no [PSRS] was in the paperwork. If I had known that I never would of even signed it."

On cross-examination, the Petitioner testified that he did not know the amount of time he was facing if he went to trial. He said that he remembered "sitting up here" at the guilty plea hearing but that he did not remember the trial court telling him that he could serve a fourteen-year sentence. He acknowledged that the trial court asked him some questions at the hearing, including whether he signed the paperwork for his guilty pleas. The Petitioner told the trial court yes. The Petitioner said at the post-conviction evidentiary hearing, though, that the only paperwork he remembered signing was the form to relieve first trial counsel from representation and that "I didn't go over no

---

[1] One of the two victims testified at sentencing.

- 4 -

paperwork with my lawyer." The Petitioner acknowledged that the trial court went over his rights with him and that he told the trial court he understood them. The Petitioner stated, "I was saying, 'Yes, sir,' at that moment, but no, . . . I didn't understand it."

The Petitioner testified that when first trial counsel did not appear at the plea hearing, he agreed to waive first trial counsel's appearance and go forward with third trial counsel. The Petitioner said, "I was going forward to get probation." He acknowledged that no one forced him to plead guilty but said that he entered his pleas based on "the understanding" that he was going to receive probation. He acknowledged that the trial court advised him that he may not receive probation and that the trial court asked him if he wanted to proceed with his guilty pleas. The Petitioner told the trial court yes.

The Petitioner testified that he did not remember the State's saying several times at the plea hearing, "'No petition to suspend the remainder of the sentence.'" He said second trial counsel "never went over anything" with him and never relayed the State's plea offer to him. The only thing third trial counsel told him was that third trial counsel was "going forward with [him] to have a hearing," and the only thing the Petitioner knew about his guilty pleas was that he was going to receive six years on probation. The Petitioner said he was "tunnel visioned by the probation" and "wasn't even thinking about nothing but the probation." He stated that none of his attorneys discussed the amount of time he was facing and that "[i]f the Judge went over it with me the day of me signing for the time, that was the only time that I had heard of, of me facing any time."

Second trial counsel testified for the State that in 2016, she had been practicing law for twelve years. She represented the Petitioner in several cases, and the Petitioner "had another attorney on another case." Second trial counsel said that the State made a plea offer and that she was "sure" she discussed the offer with the Petitioner. She stated that she did not remember the specific terms of the offer but that "[w]hatever terms applied to the offer I would have conveyed that to him. I copy my offer straight from the state's file, or based upon our conversations and would have conveyed all of that to him." Second trial counsel said that she did not remember reviewing the guilty pleas with the Petitioner and that she did not go over the paperwork for the guilty pleas with him because third trial counsel "took the case over before we got to that point." Second trial counsel did not think she was present at the Petitioner's guilty plea or sentencing hearings.

Second trial counsel testified that she and the Petitioner "did not get along that well." His son played basketball for Kansas, and "he was insistent on trying to get out of custody to go see his son play basketball." However, the State would not agree to "up front" probation.

- 5 -

On cross-examination, second trial counsel testified that she would not have promised the Petitioner that he would receive probation and that she did not remember talking with him about filing a petition to suspend the remainder of his sentence if the trial court denied probation. However, she stated that because "petition to suspend remainder" was part of the State's plea offer, she "[felt] sure" she would have conveyed that special condition to him. The post-conviction court asked second trial counsel if she represented the Petitioner at the plea hearing, and she said no.

At the conclusion of the hearing, the post-conviction court made the following comments:

> He had three different lawyers, which is a problem. He had a paid lawyer, who did not appear, which is a problem. The lawyer who handled negotiations didn't do the guilty plea, which is a problem. The lawyer who did the petition [to suspend the remainder of the sentence], didn't handle the guilty plea on negotiations, that's a problem.
>
> All up and down this case there were mistakes that were made and that is clear in my mind.
>
> Not the best lawyering I've seen in my life. Sometimes we get too fast and we get too busy, instead of slowing down and handling each case, every case is different, every case is unique, every case has to be handled on its own.
>
> It is my fault for allowing the privately retained lawyer not to come in and handle this case, I regret that.
>
> My fault for this, no P. S. R. S., that is a Judicial function.
>
> But, the reason we are here is because this defendant didn't have sense enough to stop committing domestic assaults, at the end of the day, that's why we are here.

The post-conviction court took the matter under advisement.

Subsequently, the post-conviction court filed a written order denying the petition for post-conviction relief. The court stated that although the Petitioner claimed trial counsel failed to advise him that he would be unable to file a petition for a suspension of

the remainder of his sentence, "[t]he attorney testified that he was unclear as to exactly what he told the Petitioner but believes he did discuss the possibility of the suspension of the reminder of the sentence with him." The court then noted that the transcript of the guilty plea hearing showed that the State announced that the Petitioner could not file a petition to suspend of the remainder of his sentence. The post-conviction court also noted that the judgment forms stated "'<u>no PSRS</u>,'" that the Petitioner signed the forms, and that there was no testimony at the evidentiary hearing that the special condition was added to the forms after the Petitioner signed them. The court found that "the record clearly shows that the agreement provided for <u>no PSRS</u>." The court concluded that although the Petitioner "did not receive the best of legal representation," he failed to show that trial counsel were deficient, that he was prejudiced by any deficiency, or that his guilty pleas were involuntary.

## II. Analysis

On appeal, the Petitioner contends that trial counsel were deficient because they failed to tell him that his plea agreement included his being unable to file a petition to suspend the remainder of his sentence. He also contends that the deficiency resulted in his pleas being involuntary because he would not have pled guilty if he had known about the special condition. The State argues that the court properly denied the petition. We agree with the State.

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. <u>See</u> Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" <u>State v. Holder</u>, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting <u>Hodges v. S.C. Toof & Co.</u>, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. <u>See</u> <u>Henley v. State</u>, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. <u>See</u> <u>Fields v. State</u>, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. <u>See</u> <u>State v. Burns</u>, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. <u>See</u> <u>Fields</u>, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. <u>Id.</u>

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697). Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial." Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When a defendant enters a plea of guilty, certain constitutional rights are waived, including the privilege against self-incrimination, the right to confront witnesses, and the right to a trial by jury. Boykin v. Alabama, 395 U.S. 238, 243 (1969). Therefore, in order to comply with constitutional requirements a guilty plea must be a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). In order to ensure that a defendant understands the constitutional rights being relinquished, the trial court must advise the defendant of the consequences of a guilty plea, and determine whether the defendant understands those consequences. Boykin, 395 U.S. at 244.

In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to

confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

Initially, we note that the transcript for the post-conviction evidentiary hearing reflects that post-conviction counsel entered the plea and sentencing hearing transcripts as exhibit 1. However, the transcripts were not included in the appellate record. Although the trial court clerk should have included exhibit 1 in the record, it is the Petitioner's duty to prepare a record which conveys a fair, accurate, and complete record on appeal to enable meaningful appellate review. See Tenn. R. App. P. 24(b). Moreover, the State's brief notes the absence of the transcripts from the record, yet the Petitioner chose to let the record remain incomplete rather than request permission to supplement the record with the transcripts pursuant to Rule 24(g), Tennessee Rules of Appellate Procedure. Nevertheless, "appellate courts have the authority to supplement a record when necessary." State v. Caudle, 388 S.W.3d 273, 279 (Tenn. 2012) (citing Tenn. R. App. P. 24(e)). On January 31, 2019, this court ordered that the trial court clerk supplement the record with exhibit 1.

Our review of the plea hearing transcript belies third trial counsel's testimony that he entered the guilty plea in case number 14-06112 and that second trial counsel entered the Petitioner's guilty pleas in the remaining four cases. Instead, third trial counsel represented the Petitioner at the plea hearing in all five cases. Third trial counsel also signed the "Petition for Waiver of Trial by Jury and Request for Acceptance of Plea of Guilty" form, which set out the sentence length for all of the Petitioner's convictions. Moreover, the plea hearing transcript confirms that after the State read each of the five charges to which the Petitioner was pleading guilty, the State said the Petitioner was to have no contact with the victim and "no petition to suspend the remainder of his sentence." It was third trial counsel's responsibility to know the terms of the plea agreement. Therefore, we conclude that third trial counsel was deficient for not learning until months later that the plea agreement included a special condition that the Petitioner could not file a petition to suspend the remainder of his sentence.

That said, the Petitioner also was present at the plea hearing when the State said five times that he could not petition for suspension of the remainder of his sentence. The judgment forms, which the Petitioner signed, also stated "NO PSRS." As noted by the post-conviction court, none of the witnesses, including the Petitioner, testified at the evidentiary hearing that "NO PSRS" was added after the Petitioner signed the forms.

- 9 -

The Petitioner was thirty-nine years old at the time of his plea hearing and acknowledged that he had prior convictions for three felonies and twenty-one misdemeanors. He was facing a ten-year sentence for aggravated assault in this case but pled guilty in exchange for a six-year sentence with the manner of service of the sentence to be determined by the trial court. The trial court warned the Petitioner before he entered his pleas that "the odds are against you [for probation]" and asked if he wanted to proceed anyway. The Petitioner, convinced that he would receive probation, said yes. Although the Petitioner testified at the evidentiary hearing that he would not have pled guilty if he had known that he could not file a petition to suspend the remainder of his sentence, he also testified that he was "tunnel visioned by the probation" and that he "wasn't even thinking about nothing but the probation." Therefore, while we conclude that third trial counsel was deficient, we also conclude that the Petitioner has failed to demonstrate that the deficiency resulted in his guilty pleas being involuntary.

### III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE